AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

<table>
<tr><td>In the Matter of the Search of<br><i>(Briefly describe the property to be searched<br>or identify the person by name and address)</i><br><br>Teal Motorola Cell Phone<br>Model: Unknown<br>With no other identifying numbers or features</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.   23-mj-08030-LR</td></tr>
</table>

**FILED**

Jan 20 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ carolinal        DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Robert Perez incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Robert Perez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:   ___01/19/2023___

_____
*Judge's signature*

City and state:   El Centro, California

HON. LUPE RODRIGUEZ, JR , US MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-3
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:           Teal Motorola Cell Phone
Model: Unknown
With no other identifying numbers or features
Seized from Jose CABRERA-Galvan
**(Target Device #3)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 5, 2022, up to and including December 5, 2022, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

1

**AFFIDAVIT**

2      I, Robert Perez, United States Border Patrol Agent, having been duly sworn, depose

3  and state as follows:

4

**INTRODUCTION**

5      1.      I submit this affidavit in support of an application for warrant(s) to search

6  the following electronic device(s):

7   **A-1:**              Silver iPhone
8                         Model: Unknown
                          With no other identifying numbers or features
9                         Seized from Anthony Manuel JACO
10                        **(Target Device #1)**

11  **A-2:**              Pink iPhone
12                        Model: Unknown
                          With no other identifying numbers or features
13                        Seized from Rachell Berenice CRUZ-Varas
14                        **(Target Device #2)**

15  **A-3:**              Teal Motorola Cell Phone
16                        Model: Unknown
                          With no other identifying numbers or features
17                        Seized from Jose CABRERA-Galvan
18                        **(Target Device #3)**

19  **A-4:**              Black ZTE Cell Phone
20                        Model: Unknown
                          With no other identifying numbers or features
21                        Seized from Fredy VILLANUEVA-Vazquez
                          **(Target Device #4)**
22

23  as further described in Attachments A-1, A-2, A-3 and A-4, and to seize evidence of a

24  crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien

25  Smuggling), as further described in Attachment B.

26      2.      The requested warrant relates to the investigation and prosecution of Anthony

27  Manuel JACO and Rachell Berenice CRUZ-Varas for illegally transporting Jose

28  CABRERA-GALVAN and Fredy VILLANUEVA-VAZQUEZ (the "Material Witnesses")

1

in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from JACO, CRUZ-Varas, CABRERA-Galvan, and VILLANUEVA-Vazquez on or about December 4, 2022, incident to their arrest. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since August 2000, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 24-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.      The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On December 4, 2022, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Unit's Field Intelligence Team (FIT) were conducting surveillance in Calexico, California. On this date, at approximately 5:30 p.m., BPA C. Toledo was travelling eastbound on Interstate 8, west of the Brock Research Center Road Exit, when he observed a white Volkswagen Jetta (Jetta), turn the vehicles hazards on and continue to slam on the brakes to slow down, then speed up before pulling over at the Brock Research Center Road Exit sign. BPA C. Toledo passed the Jetta but continued to watch the Jetta by utilizing the rear-view mirrors. As BPA C. Toledo continued travelling eastbound on Interstate 8, he watched as the Jetta merged back onto the eastbound lanes of Interstate 8 and continued travelling eastbound towards Yuma, Arizona. Through experience, BPA C. Toledo believed that the Jetta was in the area to pick up illegal aliens. BPA C. Toledo relayed his observation to additional FIT Agents in the area and requested an Agent to respond to his location and confirm the license plate of the Jetta.

11.    BPA D. Amparan, who was also travelling eastbound on Interstate 8, just west of BPA C. Toledo's location, positioned his unmarked service vehicle behind the Jetta and relayed to additional FIT Agents that the license plate of the Jetta was 9ANS557. Records checks on the Jetta revealed that that the Jetta was registered out of Los Angeles, CA. Additional FIT Agents set up along Interstate 8 and continued mobile surveillance on the Jetta as it continued travelling eastbound on Interstate towards Yuma, Arizona.

12.    While FIT Agents were conducting mobile surveillance on the Jetta, BPA C. Toledo positioned himself ahead of the Jetta in the Quechan Casino parking lot, located at 525 Algodones Road, Winterhaven, California. As BPA C. Toledo was driving in the Quechan Casino parking lot, he observed the Jetta enter the parking lot and park near the main entrance of the casino. BPA C. Toledo watched as the Jetta remained parked in the

parking lot for approximately 20 minutes before exiting the parking lot and travelling towards Interstate 8. As the Jetta approached the westbound and eastbound onramps to Interstate 8, FIT Agents momentarily lost visual of the Jetta. FIT Agents regained visual on the Jetta while travelling in the westbound lanes of Interstate 8, back towards Calexico, California.

13.    As the Jetta continued travelling westbound on Interstate 8, towards Calexico, California, FIT Agents positioned their unmarked service vehicles behind the Jetta as well as in front of the Jetta and kept constant visual on the Jetta. While travelling westbound on Interstate 8, in front of the Jetta, BPA D. Amparan observed two individuals run northbound across the westbound lanes of Interstate 8 from the southside of the freeway, just east of the Gordons Well Exit. BPA-D. Amparan relayed this information to the additional FIT Agents who were also conducting mobile surveillance on the Jetta. As the Jetta was approaching the Gordons Well Exit, BPA A. Garcia watched as the Jetta pulled over, came to a complete stop, and the two individuals ran to the Jetta and entered the back seat of the Jetta. After the two individuals entered the Jetta, FIT Agents watched as the Jetta merged back onto the westbound lanes of Interstate 8 and continued travelling westbound towards Calexico, California.

14.    FIT Agents kept constant visual on the Jetta as it began travelling back towards Yuma, Arizona. FIT Agents again positioned their unmarked service vehicles behind the Jetta and kept constant visual on the Jetta as it travelled out of California and into Arizona. FIT Agents elected to continue following the Jetta in hopes that the driver would lead them to a stash house where other culpable parties would be interdicted/arrested.

15.    While continuing mobile surveillance on the Jetta, BPA K. Hewson began tracking foot sign for two suspected illegal aliens from the United States/Mexico International Boundary Fence towards the Gordons Well Exit. The foot sign was tracked to Interstate 8 and observed at the area where the Jetta picked up the two individuals. BPA K. Hewson informed the Remote Video Surveillance System operator that the foot sign

had ran back towards Interstate 8 where the individuals appeared to have been picked up by a vehicle, undetected by BPAs.

16.     As the Jetta passed the Foothills Boulevard Exit, FIT Agents activated the lights and sirens of their unmarked service vehicles to conduct a vehicle stop on the Jetta and conduct an immigration inspection on all occupants within the Jetta. The Jetta pulled over and came to a complete stop approximately one mile east of the Foothills Boulevard Exit. Supervisory BPA-Intelligence M. Clinton approached the Jetta with Border Patrol markings and insignia fully visible. BPA M. Clinton identified himself as a Border Patrol Agent to the driver and front seat passenger, later identified as Anthony Manuel JACO (JACO) and Rachell Berenice CRUZ-Varas (CRUZ) respectively. BPA M. Clinton questioned JACO as to his citizenship while BPA C. Toledo questioned CRUZ. Both JACO and CRUZ stated that they were United States citizens. BPA A. Garcia then questioned the two back seat passengers, later identified as Fredy VILLANUEVA-Vazquez (VILLANUEVA) and Jose CABRERA-Galvan (CABRERA) as to their citizenship. VILLANUEVA and CABRERA admitted to being in the United States illegally. Both illegal aliens admitted that they made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. Both illegal aliens were not give-up's and attempted to evade capture and elude inspection. JACO, CRUZ, VILLANUEVA and CABRERA were subsequently placed under arrest.

17.     After the individuals were placed under arrest, and during a search incident to seizure of the Jetta, BPA Clinton discovered a small bag of white powder which had the characteristics of cocaine under the driver's seat. An additional identical bag of what appeared to have cocaine residue was discovered by BPA Toledo in the center console of the Jetta. BPA Clinton later tested the substance using NIK Test "G", which returned positive for the properties of cocaine. The total weight of the cocaine was approximately 1.3 grams.  A search incident to the arrest of JACO and CRUZ by BPA Clinton also discovered four cell phones.  One silver iPhone (Target Device #1) was found on the driver's seat and one pink iPhone (Target Device #2) was found on passenger seat of the

1  vehicle. JACO claimed ownership of Target Device #1 and CRUZ claimed ownership of
2  Target Device #2. A teal Motorola Cell Phone (Target Device #3) was found on the back
3  of the vehicle and Material Witness CABRERA claimed ownership of this Device. One
4  black ZTE cell phone was found on Material Witness VILLANUEVA's person (Target
5  Device #4) and VILLANUEVA claimed ownership of the Target Device.  The Target
6  Devices were seized as evidence and JACO, CRUZ, VILLANUEVA and CABRERA were
7  transported to the Calexico Border Patrol Station for further processing.

8      18.    At the Calexico Border Patrol Station, on December 4, 2022, at approximately
9  10:23 p.m., JACO provided BPA A. Garcia with a statement in the English language
10  witnessed by BPA A. Botello. JACO understood his rights and was willing to provide a
11  statement without the presence of an attorney. JACO stated he was born in Los Angeles,
12  California on November 11, 1987, and is a United States citizen.  JACO also stated that he
13  resides in Los Angeles, California.  JACO stated he is the registered owner of the Jetta.
14  JACO stated that on today's date he went for a cruise.  JACO stated he was lost on the
15  interstates and ended up down here. JACO stated that he pulled over to give people a ride
16  that were stranded and maybe they got left. JACO stated that he did not smuggle anyone
17  across the border. JACO stated that he and CRUZ were just exploring.  The statement was
18  concluded on December 4, 2022, at 10:45 p.m.

19      19.    At the Calexico Border Patrol Station, on December 4, 2022, at approximately
20  9:56 p.m., CRUZ provided BPA A. Garcia with a statement in the English language
21  witnessed by BPA A. Botello. CRUZ understood her rights and was willing to provide a
22  statement without the presence of an attorney. CRUZ stated she was born in Los Angeles,
23  California on November 21, 1996, and is a United States citizen.  CRUZ also stated that
24  she resides in Montecito Heights, California.  CRUZ stated that on today's date she and
25  JACO traveled to the Quechan Casino from Los Angeles. CRUZ stated that they stopped
26  at a Seven Eleven in San Diego and then traveled east on Interstate 8 to the Casino without
27  stopping at any time. CRUZ was confronted with the fact that she and JACO were seen
28  stopped on the side of Interstate 8 she changed her story to "we were Checking Maps".

1    When questioned how much she was being paid she stated that JACO just told her that he
2    would take care of her. CRUZ stated that she did not think that picking up illegal aliens
3    that were already in the United States would be illegal. The statement was concluded on
4    December 4, 2022, at 10:19 p.m.

5       20. At the Calexico Border Patrol Station, on December 4, 2022, at approximately
6    11:10 p.m., VILLANUEVA provided BPA A. Botello with a statement in the Spanish
7    language, witnessed by BPA A. Garcia. VILLANUEVA stated his complete and correct
8    name is Fredy Alberto VILLANUEVA-Vazquez. VILLANUEVA was born on August 30,
9    1991, in Morelos, Mexico. VILLANUEVA stated he is a citizen of Mexico.
10    VILLANUEVA is not in possession of a document that would allow him to enter, work or
11    remain in the United States. VILLANUEVA stated he was being charged $10,500 USD to
12    be smuggled into the United States. VILLANUEVA was shown photo line ups and was
13    asked if he could identify anyone.  CABRERA was able to identify JACO and CRUZ. The
14    interview was concluded on December 4, 2022, at 11:22 p.m.

15       21. At the Calexico Border Patrol Station, on December 4, 2022, at approximately
16    10:52 p.m., CABRERA provided BPA A. Botello with a statement in the Spanish language,
17    witnessed by BPA A. Garcia. CABRERA stated his complete and correct name is Jose
18    CABRERA-Galvan. CABRERA was born on April 5, 2002, in Morelos. CABRERA stated
19    he is a citizen of Mexico. CABRERA is not in possession of a document that would allow
20    him to enter, work or remain in the United States. CABRERA stated he was traveling to
21    Los Angeles, California, to work. CABRERA stated he was being charged $10,000 USD
22    to be smuggled into the United States.  While in the Jetta, CABRERA overheard the female
23    passenger, CRUZ, say, "las luces". CABRERA was shown photo line ups and was asked
24    if he could identify anyone.  CABRERA was able to identify JACO and CRUZ. The
25    interview was concluded on December 4, 2022, at 11:05 p.m.

26       22. Based upon my experience and investigation in this case, I believe that JACO,
27    CRUZ, the Material Witnesses and other persons, as yet unknown, were involved in an
28    alien smuggling venture and that JACO, CRUZ and the Material Witnesses used the Target

Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

23.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on November 5, 2022, up to and including December 5, 2022, the day after the arrest of JACO, CRUZ and the Material Witnesses.

## METHODOLOGY

24.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions

1  for acquiring some of the data stored in some cellular telephone models using forensic
2  hardware and software.  Even if some of the stored information on the device may be
3  acquired forensically, not all of the data subject to seizure may be so acquired.  For devices
4  that are not subject to forensic data acquisition or that have potentially relevant data stored
5  that is not subject to such acquisition, the examiner must inspect the device manually and
6  record the process and the results using digital photography.  This process is time and labor
7  intensive and may take weeks or longer.

8      25.  Following the issuance of this warrant, a case agent familiar with the
9  investigation will collect the Target Devices and subject them to analysis. All forensic
10 analysis of the data contained within the telephone, and its memory cards will employ
11 search protocols directed exclusively to the identification and extraction of data within the
12 scope of this warrant.

13     26.  Based on the foregoing, identifying and extracting data subject to seizure
14 pursuant to this warrant may require a range of data analysis techniques, including manual
15 review, and, consequently, may take weeks or months.  The personnel conducting the
16 identification and extraction of data will complete the analysis within ninety (90) days of
17 the date the warrant is signed, absent further application to this Court.

18    //
19    //
20    //
21    //
22    //
23    //
24    //
25    //
26    //
27    //
28    //

1

## CONCLUSION

2     27.    Based on all of the facts and circumstances described above, I believe that

3 probable cause exists to conclude that JACO, CRUZ and the Material Witnesses used the

4 Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were

5 used to facilitate the offense by transmitting and storing data, specifically that described in

6 Attachment B, which constitutes evidence of violations of Title 8, United States Code,

7 Section 1324. I also believe that probable cause exists to believe that evidence of illegal

8 activity committed by JACO, CRUZ and the Material Witnesses, and others continues to

9 exist on the Target Devices. Therefore, I respectfully request that the Court issue this

10 warrant.

11

12     I swear the foregoing is true and correct to the best of my knowledge and belief.

13

14

15                            Robert Perez, Border Patrol Agent
                           United States Border Patrol

16

17     Attested to by the applicant in accordance with the requirements of Fed. R.

18 Crim. P. 4.1 by telephone on this 19th day of January, 2023.

19

20                    2:57 p.m.

21 HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

12

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1**:               Silver iPhone
                       Model: Unknown
                       With no other identifying numbers or features
                       Seized from Anthony Manuel JACO
                       **(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**   Pink iPhone
Model: Unknown
With no other identifying numbers or features
Seized from Rachelle Berenice CRUZ-Varas
**(Target Device #2)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3**:            Teal Motorola Cell Phone
Model: Unknown
With no other identifying numbers or features
Seized from Jose CABRERA-Galvan
**(Target Device #3)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-4**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**            Black ZTE Cell Phone
Model: Unknown
With no other identifying numbers or features
Seized from Fredy VILLANUEVA-Vasquez
**(Target Device #4)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 5, 2022, up to and including December 5, 2022, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.